IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                     No. 00 CR 0941 MV

TRAVIS SEAN BOYD,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant Travis Sean Boyd's Sentencing Memorandum [Doc. 34], filed February 2, 2012.  The Court held a hearing on Defendant's Sentencing Memorandum on June 7, 2012.  The Court has considered the briefs, arguments, relevant law, and being otherwise fully informed, **FINDS** that Defendant's sentence should be reduced to 292 months for the reasons stated herein.

## BACKGROUND

On September 13, 2000, following a trial before the honorable Judge Paul Kelly of the Tenth Circuit Court of Appeals, Defendant Travis Sean Boyd was convicted by jury of conspiracy and possession with intent to distribute 50 grams and more of cocaine base.  On January 12, 2001, Defendant appeared for a sentencing hearing before Judge Kelly.  Prior to sentencing, the United States Probation Office filed its Presentence Report (PSR), which calculated a guideline range of 360 months to life imprisonment, pursuant to an offense level of

1

40 and a criminal history category of III.  However, pursuant to U.S.S.G. § 4A1.3, the PSR included a finding that Defendant's criminal history category of III over-represented the seriousness of his criminal history.  *See* U.S.S.G. § 4A1.3(b)(1) ("If reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted.").  Accordingly, the PSR author recommended that the Court reduce Defendant's criminal history category to I, which would yield a guideline range of 292 to 365 months.

Judge Kelly agreed with the Probation Office's recommendation and found that Defendant's criminal history category over-represented the seriousness of his criminal history. He found that a criminal history category of I more accurately reflected Defendant's criminal history, and accordingly calculated the guideline range to be 292 to 365 months.  Judge Kelly sentenced Defendant to 300 months' imprisonment on each count, to run concurrently. Defendant now moves for a reduction in his sentence pursuant to Amendment 750 to the Sentencing Guidelines, which was promulgated to effectuate the Fair Sentencing Act of 2010 (FSA).  Amendment 750 reduces Defendant's offense level from 40 to 38.

## APPLICABLE LAW

In an effort to reduce the disparity in criminal penalties imposed upon crack versus powder cocaine offenders, the Fair Sentencing Act of 2010 (FSA) increased the amount of crack cocaine necessary to trigger mandatory minimum sentences.  *See generally* Pub. L. No. 111–220, 124 Stat. 2372.  Amendment 750 to the Sentencing Guidelines altered the drug-quantity tables in

the Guidelines, "increasing the required quantity to be subject to each base offense level in a manner proportionate to the statutory change to the mandatory minimums effectuated by the FSA." *United States v. Osborn*, 679 F.3d 1193, 1194 (10th Cir. 2012) (quotation omitted).  On November 1, 2011, the Sentencing Commission gave Amendment 750 retroactive effect. U.S.S.G. § 1B1.10, Historical Note; U.S.S.G. Appendix C, amendment 759 (2011).

When a defendant "has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered [and made retroactive] by the Sentencing Commission," 18 U.S.C. § 3582(c)(2), district courts have authority to modify the original sentence.  The sentence may be modified only pursuant to Congress's authorization to "reduce the term of imprisonment, after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2).  Section 1B1.10 of the sentencing guidelines instructs courts on how to determine a defendant's eligibility for a sentence modification, as well as the extent of the reduction authorized.  Once the Court ascertains that a defendant is eligible for a reduction, it then looks to 18 U.S.C. § 3553(a) to determine whether or not the authorized reduction is warranted, either in whole or in part. *Dillon v. United States*, 130 S. Ct. 2683, 2691 (2010).  Sentence modification proceedings pursuant to § 1B1.10 do not constitute a full resentencing.  U.S.S.G. § 1B1.10(a)(3).  Rather, the Court is instructed to

> determine the amended guideline range that would have been applicable to the defendant if [Amendment 750] had been in effect at the time the defendant was sentenced.  In making such determination, the court shall substitute only the [applicable amendment]

for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected.

U.S.S.G. § 1B1.10(b)(1).

## DISCUSSION

In this case, the parties agree that § 1B1.10 and Amendment 750 authorize the Court to reduce Defendant's sentence. They also agree that a reduction is warranted in light of the § 3553(a) factors. The issue on which the parties disagree is the extent of relief for which Defendant is eligible.

## I.     Effect of Judge Kelly's Over-Representation Departure

Section 4A1.3 authorizes a reduction in criminal history category when "reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3(b)(1). Defendant argues that Judge Kelly's decision to sentence Defendant according to criminal history category I constituted a "guideline application decision" that the Court in the instant proceeding must "leave unaffected" pursuant to U.S.S.G. § 1B1.10(b)(1). The Government argues that this action on Judge Kelly's part was a "departure," which the Court must undo to arrive at the guideline range "applicable to Defendant" pursuant to § 1B1.10(a)(1).

As noted above, U.S.S.G. § 1B1.10 instructs the Court to determine the effect of Amendment 750 on Defendant's sentence, and "leave all other guideline application decisions unaffected." U.S.S.G. § 1B1.10(b)(1). The Supreme Court has interpreted this language as

4

prohibiting courts from considering "aspects of [the defendant's] sentence that . . . were not affected by the Commission's amendment to § 2D1.1." *Dillon*, 130 S. Ct. at 2694. In a subsequent case, the Supreme Court framed § 1B1.10 as "seek[ing] to isolate whatever marginal effect the since-rejected Guideline had on the defendant's sentence." *Freeman v. United States*, 131 S. Ct. 2685, 2692 (2011). This would compel the conclusion that the Court cannot revisit Judge Kelly's decision to sentence Defendant pursuant to a reduced criminal history category.

Yet the application notes to § 1B1.10 lead to the opposite conclusion. After reiterating that a defendant is eligible for sentence modification only if the amendment "lowers the applicable guideline range," U.S.S.G. § 1B1.10 cmt. n.1(A), the application notes define the "applicable guideline range" is as "the guideline range that corresponds to the offense level and criminal history category determined pursuant to 1B1.1(a), which is determined before consideration of any departure provision in the Guidelines Manual or any variance." *Id*. The application notes further carve out an exception to this rule for departures imposed pursuant to a government motion for substantial assistance:

> Exception for Substantial Assistance. – If the term of imprisonment imposed was less than the term of imprisonment provided by the guideline range applicable to the defendant at the time of sentencing pursuant to a government motion to reflect the defendant's substantial assistance to authorities, a reduction comparably less than the amended guideline range determined under subdivision (1) of this subsection may be appropriate.

U.S.S.G. § 1B1.10(b)(2)(B). Moreover, this guideline was amended in 2011; the 2010 version reads as follows:

> Exception. – If the original term of imprisonment imposed was less than the term of imprisonment provided by the guideline range applicable to the defendant at the time of sentencing, a reduction comparably less than the amended guideline range determined

5

under subdivision (1) of this subsection may be appropriate.  However, if the original term of imprisonment constituted a non-guideline sentence determined pursuant to 18 U.S.C. § 3553(a) and *United States v. Booker*, 543 U.S. 220 (2005), a further reduction generally would not be appropriate.

U.S.S.G. § 1B1.10(b)(2)(B) (2010).  In other words, while the 2010 version of the guidelines generally permitted sentencing courts to apply a comparable departure to the modified sentence, the 2011 version limits that discretion to substantial assistance departures.  The fact that the application notes were amended in this manner strongly suggests that the Commission intended to prevent sentencing courts from applying any other form of departure to a sentence modification.

The historical notes to this 2011 amendment to § 1B1.10 resolve the inquiry.  The Commission explained this aspect of Amendment 759 as follows:

> [T]he amendment amends the commentary to 1B1.10 to address an application issue. Circuits have conflicting interpretations about when, if at all, the court applies a departure provision before determining the "applicable guideline range" for purposes of 1B1.10. The First, Second, and Fourth Circuits have held that, for 1B1.10 purposes, at least some departures (*e.g.*, departures under 4A1.3 (Departures Based on Inadequacy of Criminal History Category) (Policy Statement)) are considered before determining the applicable guideline range, while the Sixth, Eighth, and Tenth Circuits have held that "the only applicable guideline range is the one established before any departures" . . . . [T]he amendment adopts the approach of the Sixth, Eighth, and Tenth Circuits and amends Application Note 1 to clarify that the applicable guideline range referred to in 1B1.10 is the guideline range determined pursuant to 1B1.1(a), which is determined before consideration of any departure provision in the *Guidelines Manual* or any variance.

U.S.S.G. § 1B1.10, Historical Note; U.S.S.G. Appendix C, amendment 759 (2011).  The historical note explicitly rejects the approach of those circuits that considered an over-representation departure to be a "guideline application decision."  This note demonstrates that the Sentencing Commission considered and rejected Defendant's precise argument in this case.

6

This leaves the Court with no choice but to calculate Defendant's guideline range according to a criminal history category of III.  An offense level of 38, combined with a  criminal history category of III, yields a guideline range of 292 to 365 months.

The Court must, however, voice its disagreement with this conclusion reached by the Sentencing Commission. It runs afoul of the Supreme Court's reasoning in *Dillon* and *Freeman*, which make clear that sentencing courts are to isolate the limited effect that the amendment has on Defendant's sentence, and adjust his guideline range accordingly.  *See Dillon*, 130 S. Ct. at 2694; *Freeman*, 131 S. Ct. at 2692.  The circumstances in *Dillon* in particular illustrate the unfairness that will result from the Commission's decision to prohibit sentencing courts from re-applying over-representation departures in sentence modification proceedings.  In *Dillon*, the defendant argued that the sentencing court was permitted to revisit mistakes it made at the original sentencing – including the purported error of sentencing him according to an "inflated" criminal history category.  130 S. Ct. at 2693.  The Supreme Court rejected this argument, stating that the defendant misunderstood the limited scope of § 3582(c)(2):

> As noted, § 3582(c)(2) does not authorize a resentencing.  Instead, it permits a sentence reduction within the narrow bounds established by the Commission.  The relevant policy statement instructs that a court proceeding under § 3582(c)(2) "shall substitute" the amended Guidelines range for the initial range "and shall leave all other guideline application decisions unaffected." § 1B1.10(b)(1).  Because the aspects of his sentence that Dillon seeks to correct were not affected by the Commission's amendment to § 2D1.1, they are outside the scope of the proceeding authorized by § 3582(c)(2), and the District Court properly declined to address them.

*Dillon*, 130 S. Ct. at 2694.  If the court that sentenced Dillon was not permitted to revisit his criminal history category because this aspect of his sentence was "outside the scope of the proceeding authorized by § 3582(c)(2)," it is unjust that this Court must now revisit Mr. Boyd's

criminal history category.  The Court can contemplate no other circumstance in which the law would forbid it from making a sentencing decision that would *benefit* a criminal defendant, yet it would be permitted take the equivalent action to the defendant's *detriment*.

Moreover, the Commission's apparent concern that led it to limit the exception set forth in § 1B1.10(b)(2)(B) to substantial assistance departures would not generally be present in the case of an over-representation departure.  The historical note explaining the more restrictive limitation states that the pre-2011 distinction – between variances and departures – was difficult to apply and prompted litigation.  U.S.S.G. § 1B1.10, Historical Note; U.S.S.G. Appendix C, amendment 759 (2011).   Accordingly, the Commission determined that "a single limitation applicable to both departures and variances furthers the need to avoid unwarranted sentencing disparities and avoids litigation in individual cases.  The limitation that prohibits a reduction below the amended guideline range in such cases promotes conformity with the amended guideline range and avoids undue complexity and litigation."  *Id*.

The Court agrees that confusion could result from the previous rule, which permitted the re-imposition of departures but forbade such action with respect to variances.  Given the similarities and overlap between the § 3553(a) factors and many of the departures set forth in Chapter Five, it is not always clear from a district court's judgment how it arrived at a below-guideline sentence.  However, this is not the case with respect to departures imposed pursuant to § 4A1.3, where the Court departs in criminal history category, rather than offense level.

Given the significant substantive differences between finding that a criminal history category is over-representative on the one hand, and finding that the § 3553(a) factors merit a

below-guideline sentence on the other hand, the guidelines have distinguished these two determinations as a procedural matter. This is evident in the guidelines' "three-step approach" to sentencing. *See* U.S.S.G. § 1B1.10, Historical Note; U.S.S.G. Appendix C, amendment 759 (2011). Courts are instructed to first determine the offense level by identifying the appropriate guideline section and applying the appropriate adjustments, and then "determine the defendant's criminal history category as specified in Part A of Chapter Four." U.S.S.G. § 1B1.1(a)(1)–(6). After employing these determinations to calculate the guideline range, courts "shall then consider" departure provisions. U.S.S.G. § 1B1.1(b). Finally, courts consider the § 3553(a) factors. U.S.S.G. § 1B1.1(c). In other words, application of Part A of Chapter Four, which includes the over-representation departure provision, is part of the first step in the three-step process. In the second step, courts apply any appropriate departure provisions from Chapter Five. Finally, the § 3553(a) factors are considered in the third step. Based on this Court's knowledge of the federal criminal sentencing process, it cannot imagine a record that would leave any question as to whether the sentencing court had applied a departure pursuant to § 4A1.3 or a variance pursuant to § 3553(a). While the Court understands that "[t]he guidelines and the relevant statutes have long recognized that defendants who provide substantial assistance are differently situated than other defendants," U.S.S.G. § 1B1.10, Historical Note; U.S.S.G. Appendix C, amendment 759 (2011), it nonetheless can identify no basis to conclude that a sentencing court's imposition of a departure pursuant to § 4A1.3 would be any less clear in the record than a departure pursuant to § 5K1.1. In conclusion, the Court finds the Commission's concern with litigation to be misplaced as it applies to over-representation departures.

9

The Court also finds it ironic that the Commission would include over-representation departures in its newly restrictive limitation, given that one of its stated concerns is avoiding unwarranted sentencing disparities in sentence modification proceedings. *See* U.S.S.G. § 1B1.10, Historical Note; U.S.S.G. Appendix C, amendment 759 (2011) ("a single limitation applicable to both departures and variances furthers the need to avoid unwarranted sentencing disparities . . ."). The entire purpose of § 4A1.3 is to acknowledge that the guidelines' method for calculating criminal history category is, at times, imperfect. This section acknowledges that the calculation of criminal history points will reach unjust results in certain cases, placing some individuals with minor criminal histories in an inflated criminal history category. Mr. Boyd's case is a compelling illustration of this imperfect nature of the guidelines: Judge Kelly found that Defendant's prior convictions were "for petty offenses and only count[ed] in the criminal history computation due to his being incarcerated for failure to pay fines." Judgment (Doc. 24) at 5.1. In 2001, Judge Kelly recognized that to leave uncorrected Mr. Boyd's criminal history category III would, in effect, create sentencing disparities, because he would be sentenced similarly to individuals with much more serious histories of criminal conduct. To prohibit this Court from re-imposing the over-representation departure creates a new disparity between Mr. Boyd and other crack-cocaine defendants who have more serious criminal histories than he, yet unlike Mr. Boyd, they will be subject to a lower guideline range in light of the Fair Sentencing Act.

As a final observation, the Court is troubled by the fact that the recent limitation imposed by the Commission applies only to defendants who received *below*-guideline sentences at their original sentencing. *See* U.S.S.G. § 1B1.10(b)(2)(A)–(B) (prohibiting sentences that are "less

than the minimum of the amended guideline range" with the exception of substantial assistance departures, but remaining silent as to above-guideline sentences). If Judge Kelly had found that Mr. Boyd's criminal history category *under*-represented the seriousness of his criminal history, and accordingly placed him in category IV, it appears that Court would be permitted to sentence Mr. Boyd according to a category IV. This is particularly so given the language quoted above from *Dillon* and *Freeman*. This leads to a perverse result where the defendants who do not benefit from Congress's effort to "restore fairness to Federal cocaine sentencing," Pub. L. No. 111–220, 124 Stat. 2372, are those defendants whose criminal histories were comparably less severe than others who had committed similar offenses.

## II.      Determining the Extent of the Reduction

The parties agree that Mr. Boyd has been a model prisoner over the last thirteen years. He has been sanctioned only twice for non-violent disciplinary violations, and both of these instances occurred in 2004. Due to his longstanding good conduct, he is now in a low security camp. He has been steadily employed and has completed thousands of hours of educational and vocational training. He has also participated in substance abuse treatment programs and has earned certificates in parenting skills and stress management. In light of this impressive history, were the Court permitted to reduce Mr. Boyd's sentence to 235 months, it would do so without hesitation. However, given the limitations discussed above, the Court must stay within the guideline range calculated according to an offense level of 38 and a criminal history category of III. A sentence at the low end of this guideline range of 292 to 365 months is appropriate in light of the § 3553(a) factors.

## CONCLUSION

The Court **FINDS** that the defendant, Travis Sean Boyd, merits an eight-month reduction in sentence.  Defendant's sentence is accordingly reduced to 292 months.


Dated this 20th day of July, 2012.


_____
MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE